WILLIAM J. GEDDES
Nevada Bar No. 6984
KRISTEN R. GEDDES
Nevada Bar No. 9027
THE GEDDES LAW FIRM, P.C.
1575 Delucchi Lane, Suite 206
Reno, Nevada 89502
Phone: (775) 853-9455
Fax: (775) 299-5337
Email: Will@TheGeddesLawFirm.com
Email: Kristen@TheGeddesLawFirm.com
*Attorneys for Plaintiff Donna Bateson*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| DONNA BATESON, an individual, | CASE NO: 3:20-cv-00289 |
| Plaintiff, | |
| vs. | **COMPLAINT** |
| RENOWN HEALTH, a domestic nonprofit corporation. | **JURY DEMAND** |
| Defendants. | |

COMES NOW Plaintiff DONNA BATESON, by and through her counsel, William J. Geddes, Esq. and Kristen R. Geddes, Esq. of The Geddes Law Firm, P.C., for her complaint (hereinafter "*Complaint*"), hereby complains of Defendant RENOWN HEALTH, as follows.

**I.**

**STATEMENT OF THE CASE**

This is an employment-discrimination case, arising under the § 504 of the Rehabilitation Act (disability discrimination and retaliation), NRS 613.333 (discharge of an employee for the lawful use of a product outside the premises of the employer), and tortious discharge in violation of public policy (for retaliation based on the employee's pursuit of worker's compensation benefits). Plaintiff Donna Bateson worked for Renown Health as a residential aide at the Monaco Ridge Assisted Living Center in Reno, Nevada. She worked there for more than five years, from June of 2013 to August 24, 2018. On August 13, 2018, Bateson was injured at work, in two separate incidents. The first incident occurred

when Bateson tried to help one resident walk to his bed.  The second incident occurred when she was lifting and placing another resident into his wheelchair.  Her injuries—which amount to disabilities under the Rehabilitation Act—included bulging and protruding discs and a torn hip socket, for which she received ongoing medical treatment, including physical therapy, a nerve-blocker injection for pain, and ultimately surgery for her hip socket.  The day after she was injured at work, Bateson pursued a worker's compensation claim.  Bateson also needed to take a couple of days off from work for medical reasons relating to her injuries/disabilities—which requests for medical leave amounted to requests for an accommodation of a disability under the Rehabilitation Act.  Two weeks after the workplace injuries occurred, Bateson was fired.  The temporal proximity of her firing and the occurrence of her disabilities and requests for accommodation create an inference that Renown Health engaged in unlawful discrimination and retaliation against Bateson in violation of the Rehabilitation Act.

Renown Health's claimed basis for firing Bateson is a nonsensical pretext or violates state law.  Specifically, Renown Health claims to have fired Bateson because her drug/alcohol screen, relating to her workplace injuries, tested positive for alcohol.  But her drug/alcohol screen was taken *eleven days* after she was injured *on her day off from work*.  Thus, the test could not have indicated that Bateson was under the influence of alcohol at the time of her workplace injury, nor could the test have indicated that she was under the influence of alcohol while at work.  And Bateson's drug/alcohol screening did not occur in response to any request by Renown Health that she be tested for drugs or alcohol after the occurrence of her Workplace Injury.  Rather, her screening happened at Renown Urgent Care as a matter of protocol when Bateson sought medical care there on her own initiative eleven days after the workplace injuries occurred because her injuries had not resolved and continued to cause her considerable pain and immobility.

During that medical visit at Renown Urgent Care, a medical practitioner evaluated Bateson's condition, confirmed the existence of her workplace injuries, prescribed her medication and treatment, and issued *medical modified-duty/work-restrictions* for Bateson.  Afterwards, a technician at Renown Urgent Care administered a drug/alcohol test to Bateson.  When the breathalyzer test was being administered, she told the technician that she was there on her *day off from work*, had consumed whiskey earlier that day because of her pain, and that the workplace injury occurred *eleven days*

The Geddes Law Firm, P.C.
1575 Delucchi Lane, Suite 206
Reno, NV 89502
Phone 775-853-9455

2

The Geddes Law Firm, P.C.
1575 Delucchi Lane, Suite 206
Reno, NV 89502
Phone 775-853-9455

1  *earlier*.   Nevertheless, the alcohol test was still administered.   Predictably, Bateson failed the

2  breathalyzer test, which detected the presence of alcohol in her system.

3  Later that same day, Renown Urgent Care contacted Bateson's supervisor at Renown Health,

4  advising her of Bateson's medical visit, Bateson's medical modified-duty/work-restrictions, and the

5  fact that Bateson failed the breathalyzer.   The supervisor then telephoned Bateson later that same day,

6  August 24, 2018, and suspended her without explanation.   Bateson was ordered to return to work on

7  Monday, August 27, 2018, whereupon she was immediately directed to attend a meeting with

8  Renown's Human Resources Department.   During this meeting, Bateson was told she was going to be

9  fired, ostensibly for failing the breathalyzer test administered on August 24, 2018.   But Bateson

10 explained that the alcohol test was administered *eleven (11) days after* her workplace injuries occurred,

11 *on her day off from work*, and that the test did not indicate that she was under the influence of alcohol at

12 work or when her workplace injuries occurred.   She pointed out that the claimed basis for firing her

13 made no sense.   In response, Renown Health fired Bateson, saying "sorry, that's the way it is."

14 Bateson alleges that Renown fired her because of her disabilities and also in retaliation for her

15 "protected activity" of seeking an accommodation of her disabilities—both when asking for medical

16 leave and when seeking to return to work with medical modified-duty/work-restrictions.   As well, NRS

17 613.333 prohibits employers from discharging or taking other discriminatory action against employees

18 for their "lawful use in Nevada of any product"—such as alcohol—"outside the premises of the

19 employer during the employee's nonworking hours, if that use does not adversely affect the employee's

20 ability to perform his or her job or the safety of other employees."   Thus, Renown Health's proffered

21 reason for firing Bateson amounts to a *prima facie* violation of NRS 613.333.   Finally, the temporal

22 proximity of Bateson's firing, after she sought worker's compensation benefits, creates an inference

23 that Renown Health tortiously discharged Bateson in violation of public policy for her having pursued

24 workers' compensation benefits.   Bateson seeks monetary, equitable, and injunctive relief, including

25 reinstatement.

26 / / /

27 / / /

28 / / /

3

## II.

## JUISDICTION AND VENUE

1. The federal claims of this case are maintained pursuant to 28 U.S.C. § 1331 ("[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States").

2. In particular, this case asserts federal discrimination claims, actionable under § 504 of the Rehabilitation Act, 29 U.S.C. § 701 *et seq.* and 29 U.S.C. § 794 *et seq*, including its amendment acts and the Civil Rights Restoration Act of 1987.

3. This Court has supplemental jurisdiction over the state-law claims, for unlawful discrimination under NRS 613.333 (discharge of an employee for the lawful use of a product outside the premises of the employer) and tortious discharge in violation of public policy (for retaliation based on the employee's pursuit of worker's compensation benefits), pursuant to 28 U.S.C. § 1367(a) ("the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution").

4. Venue is proper in the U.S. District Court situated in Reno, Nevada, under Local Rule IA 1-6 and 28 U.S.C. § 1391(b) because this Court is located in the "unofficial Northern Division," embracing the Consolidated Municipality of Carson City, and because:

    A. Defendant Renown Health conducted business in Reno, Nevada, at the Monaco Ridge Assisted Living Center and at the Renown Urgent Care, where a substantial part of the events or omissions giving rise to the claims of the case occurred; and

    B. Venue is proper in a judicial district in which a substantial part of the events or omissions giving rise to the claims of the case occurred, or where any defendant resides.

## III.

## PARTIES

5. At all relevant times herein, Plaintiff DONNA BATESON ("BATESON") was a citizen of the state of Nevada, residing in the city of Reno and county of Washoe, and she was employed by Defendant RENOWN HEALTH *ex rel.* the NDOC, as residential aide, working at the Monaco Ridge

The Geddes Law Firm, P.C.
1575 Delucchi Lane, Suite 206
Reno, NV 89502
Phone 775-853-9455

4

Assisted Living Center ("Monaco Ridge"), located at 10101 Double R Boulevard, in Reno, Nevada 89521, from about June of 2013 to August 24, 2018.

6.      At all relevant times herein, Plaintiff RENOWN HEALTH ("RENOWN") was a domestic nonprofit corporation, authorized to do business in the state of Nevada and actually doing business as a corporation in the state of Nevada, operating medical facilities, health-care facilities, and assisted-living-center facilities.  RENOWN owned and operated Monaco Ridge.  RENOWN was the employer of BATESON, who served as a as residential aide at Monaco Ridge from about June of 2013 to August 24, 2018.  At all relevant times herein, when operating its medical facilities, healthcare facilities, and assisted-living-center facilities, RENOWN received, and receives, federal financial assistance from U.S. Federal departments or agencies, including by RENOWN's participation in: CHIP and Medicaid programs, Medicare programs, federal grants and loans, and federal agreements, arrangements, or other contracts, which have as one of its purposes the provision of federal financial assistance, such that RENOWN is a covered employer, within the meaning of the Rehabilitation Act and its amendment acts and the Civil Rights Restoration Act of 1987 (collectively, the "RA").

### IV.

### GENERAL ALLEGATIONS COMMON TO ALL CLAIMS

7.      BATESON was employed by RENOWN, working as a residential aide at RENOWN's Monaco Ridge in Reno, Nevada, from about June of 2013 to August 24, 2018, when she was terminated by RENOWN.

8.      On Monday, August 13, 2018, BATESON was injured at work ("Workplace Injuries") in two separate incidents that day, the first occurring at around 7:30 p.m. when trying to help one resident walk to his bed, and the second incident occurring at around 10:30 p.m. when lifting and placing another resident into his wheelchair.

9.      Shortly afterward that same day, on August 13, 2018, BATESON wrote a note to her supervisor Janelle Davis ("Davis"), informing her that she suffered these Workplace Injuries, explaining that she pulled some muscles in her back and lower stomach, and BATESON slipped that note under Davis' office door at the end of her shift that same day, at around 11:00 p.m.

10.     The next day, Tuesday, August 14, 2018, Davis told BATESON that she received

The Geddes Law Firm, P.C.
1575 Delucchi Lane, Suite 206
Reno, NV 89502
Phone 775-853-9455

5

BATESON's note that reported her Workplace Injuries, and Davis requested that BATESON fill out a "C-4" Workers' Compensation Form for her Workplace Injuries.

11.    Later that day, on August 14, 2018, BATESON filled out the "C-4" Worker's Compensation Form and gave it to Davis at work, and in so doing, BATESON pursued a worker's compensation claim for her Workplace Injuries.

12.    BATESON's Workplace Injuries were ultimately diagnosed to include bulging and protruding discs and a torn hip socket, for which she received ongoing medical treatment, including physical therapy, a nerve-blocker injection for pain, and ultimately surgery for her hip socket.

13.    At all relevant times herein, BATESON had, and has, physical impairments ("Impairments"), arising from and relating to her Workplace Injuries, including her bulging and protruding discs and her torn hip socket, which substantially limited and limit one or more of her major life activities.

14.    At all relevant times herein, BATESON, was and is a person with disabilities and handicaps (collectively, "Disabilities"), within the meaning of the RA, on account of her Impairments, including because:

A.    At all relevant times herein, BATESON's Disabilities substantially limited one or more of her major life activities.

B.    At all relevant times herein, BATESON had, and has, a record of such Impairments.

C.    At all relevant times herein, RENOWN regarded BATESON as having such Impairments.

15.    At all relevant times herein, Defendants, and each of them, were aware of BATESON's Disabilities.

16.    Notwithstanding the existence of her Disabilities, at all times relevant herein, BATESON was able to perform the essential aspects and functions of her employment, either without accommodations, or with reasonable accommodations.

17.    In the days following the occurrence of her Workplace Injuries, BATESON requested to take a couple of days off from work for medical reasons because her Workplace Injuries/Disabilities were causing her some immobility and pain, and RENOWN accommodated these requests by allowing

The Geddes Law Firm, P.C.
1575 Delucchi Lane, Suite 206
Reno, NV 89502
Phone 775-853-9455

The Geddes Law Firm, P.C.
1575 Delucchi Lane, Suite 206
Reno, NV 89502
Phone 775-853-9455

1    her to take those shifts off from work.

2        18.    These requests for medical leave amounted to requests for reasonable accommodation

3    under the RA.

4        19.    BATESON's requests for time off from work because of her Disabilities amounted to

5    "protected activity" under the RA.

6        20.    RENOWN did not personally request of BATESON that she have a drug or alcohol

7    screening performed at any time, in connection with her Workplace Injuries/Disabilities or Worker's

8    Compensation Claim.

9        21.    BATESON was not scheduled to work at Monaco Ridge on Friday, August 24, 2018,

10   which was her scheduled day off from work, and she did not work at Monaco Ridge that day, nor did

11   she visit the premises of her employment at Monaco Ridge that day either.

12       22.    On August 24, 2018, BATESON was of a legal age to consume intoxicating liquors, *see*

13   *e.g.* NRS 202.020 (1), and she consumed an intoxicating liquor, whiskey, in her home.

14       23.    Later that same day, August 24, 2018—which was eleven days after the Workplace

15   Injury occurred—BATESON sought medical treatment at RENOWN's Urgent Care Center ("Urgent

16   Care Center"), located at 1075 N. Hills Boulevard, in Reno, Nevada, as she was still experiencing

17   significant pain from her Workplace Injury and Disabilities, which were not resolving on their own,

18   and her boyfriend drove her there.

19       24.    RENOWN's Urgent Care Center was not located on the premises of BATESON's place

20   of employment at Monaco Ridge, but it was located about fourteen (14) miles away from Monaco

21   Ridge, and, thus, when BATESON visited the Urgent Care Center, she was not on the premises of the

22   place of her employment.

23       25.    During her medical evaluation at the Urgent Care Center, Physician Assistant – Certified

24   ("PAC") Jamie D. Marriot initially diagnosed BATESON's Workplace Injuries to include a strain of

25   her lumbar region and sciatica of her right side, and PAC Marriot prescribed medication to BATESON

26   and also issued medical-work restrictions to BATESON for modified duty at Monaco Ridge, including

27   no lifting, pushing, pulling more than ten pounds (10 lbs.) and no walking more than two (2) hours per

28   day.

26.     On August 24, 2018, after BATESON's medical visit at the Urgent Care Center and before BATESON was suspended or terminated, RENOWN (as the medical provider), including through its Urgent Care Center, caused BATESON's medical records and medical information, including her Worker's Compensation Form "C-4" that contained her medical work restrictions for modified duty to be transmitted immediately to RENOWN (as the employer) (including to RENOWN's employees, officers, and agents),  Ruth Golden, BATESON's supervisor, and/or RENOWN's Human Resources Department ("HR").

27.     Prior to BATESON's suspension and termination, RENOWN (including through its employees, officers, and agents) were aware that BATESON had medical work restrictions for modified duty relating to her Workplace Injuries and Disabilities, not only because RENOWN was both BATESON's medical care provider and her employer, both of whom handled BATESON's worker's compensation claim and medical records, but also because the information and medical records, including the Form "C-4," were provided to RENOWN, by electronic transmission or phone call on August 24, 2014.

28.     At all times relevant herein, the provision of BATESON's medical records and information to RENOWN (including through its employees, officers, and agents) ordering BATESON to return to work with medical work restrictions for modified duty at Monaco Ridge amounted to a request for a reasonable accommodation of BATESON's Disabilities under the RA, by, or on behalf of, BATESON, including because RENOWN Urgent Care (as the medical care provider) informed RENOWN (as the employer), that BATESON needed an adjustment or change or work for a reason related to a medical condition, *see e.g., EEOC Enforcement Guidance: Reasonable Accommodation and Undue Hardship Under the Americans with Disabilities Act*, EEOC Guidance No. 915.002 (Oct. 17, 2020), *Requesting Reasonable Accommodation, §§ 1-3,* and BATESON engaged in "protected activity," within the meaning of the anti-retaliation provisions of the RA, when this request for an accommodation was made.

29.     During the same August 24, 2018 medical visit at the Urgent Care Center, a technician at the Urgent Care Center administered a drug/alcohol screening and confirmed that BATESON had failed a breathalyzer test, indicating the presence of alcohol in BATESON's bodily system.

The Geddes Law Firm, P.C.
1575 Delucchi Lane, Suite 206
Reno, NV 89502
Phone 775-853-9455

30.     When her breathalyzer test was being administered, BATESON told the medical care provider who was administering the test, that she was there on her day off from work, had consumed whiskey earlier that day because of her pain, and that the workplace injury for which she was seeking medical treatment occurred eleven days prior to that medical visit.

31.     The Urgent Care Center personnel appeared to ignore this explanation and later contacted or caused to be contacted BATESON's supervisor and/or RENOWN Human Resources Department ("HR") personnel at RENOWN or Monaco Ridge that same day, August 24, 2018, advising the supervisor and/or HR personnel of BATESON's medical visit, her medical diagnosis and medical work restrictions for modified duty, and the fact that BATESON failed her breathalyzer test.

32.     Thereafter, Ruth Golden, BATESON's supervisor, contacted BATESON that same day, on August 24, 2018 and suspended her from work, telling BATESON not to come to work for her next shift, then-scheduled for on Sunday, August 26, 2018, and gave no reason for this suspension.

33.     RENOWN ordered BATESON to return to work on Monday, August 27, 2018, and to report directly to RENOWN's HR, whereupon BATESON met with her supervisor Davis and RENOWN HR agent Jared Preace ("Preace").

34.     During this meeting BATESON's Urgent Care medical records, along with her drug/alcohol screening paperwork of that same August 24, 2018 medical visit, was on Preace's desk.

35.     During this meeting Preace explained to BATESON that she had failed her alcohol screening test at the Urgent Care, and BATESON explained that she went to the Urgent Care Center on her day off from work to receive medical treatment for her workplace injury that occurred 11 days prior to that medical visit.

36.     Nevertheless, Preace informed BATESON that she was going to be fired for failing the breathalyzer test administered on August 24, 2018.

37.     BATESON reiterated that the alcohol test was administered eleven (11) days after the workplace injury, on her day off from work and that she had visited RENOWN Urgent Care for medical treatment for those injuries, that she had not consumed alcohol on the day she was injured and the test did not indicate as much, and that her being fired would make no sense.

38.     Jared failed to suspend the termination process or otherwise conduct further inquiry or

The Geddes Law Firm, P.C.
1575 Delucchi Lane, Suite 206
Reno, NV 89502
Phone 775-853-9455

9

reasonable investigation into the question of whether her consumption of alcohol off premises on her day off violated any company policies, but carried out the termination and stated words to the effect, "sorry, that's the way it is."

39.     As confirmed in BATESON's personnel record entitled "Notice of Corrective Action," dated August 27, 2018, RENOWN claims it terminated BATESON, effective August 27, 2018 for the following reasons:

1.   Work behavior as outlined below:

2.   ☒ Violation of **Policy # HRM.815** Alcohol, Illegal or Controlled Substances, Contraband Search and Testing, and Drug Diversion Post Mishap Testing a. Employees who have a work-related injury may be subject to drug testing as outlined in the Workers Compensation Program Policy (RENOWN.HRM.760).

**f. Test Results**

2. Positive a. If the test results of the drug/alcohol screen is positive, the employee will be terminated. Licensed personnel also will be reported to the appropriate licensing agency where applicable. Testing results will be provided only to the appropriate Human Resources representative. The test results may be disclosed to leadership on a need-to-know basis and to the employee upon request. All test results will be reviewed and confirmed by a Medical Review Officer (MRO) or MRO Assistant.

**Previous Coaching/Corrective Action: NA**

**Detailed Description:**

On 08/24/2018, you were seen at Renown Health North Hills Urgent Care, for a possible work related health condition that required a post-accident drug and alcohol screen. A positive result was received for Alcohol. You were placed on suspension at that time. Due to the violation of Renown Policy HRM. 815, the decision has been made to end your employment with Renown Health effective immediately.

(*Notice of Corrective Action.*)

40.     At all times relevant herein, RENOWN's Policy Number "RENOWN.HRM.815" (effective 8/1/2018) provided, in relevant part:

5.     Post Mishap Testing

a.   Employees who have a work-related injury may be subject to drug testing as outline in the Workers' Compensation Program Policy (RENOWN.HRM.760).

The Geddes Law Firm, P.C.
1575 Delucchi Lane, Suite 206
Reno, NV 89502
Phone 775-853-9455

b. If, in the opinion of the HR representative, department leaders or shift coordinator, it appears that the employee is not impaired and is able to perform work duties, the employee will return to work.

(RENOWN's Policy Number "RENOWN.HRM.815, at §5.)

41.     RENOWN (as the employer) did not personally request or require BATESON to submit to a drug or alcohol testing, in connection with her Workplace Injuries at any time relevant to the "Post Mishap Testing" policy of RENOWN.HRM.815, §5 or RENOWN's policy RENOWN.HRM.760.

42.     On August 24, 2018, BATESON did not visit the Urgent Care Center for the purpose of being drug or alcohol tested, in connection with her Workplace Injuries, but visited the Urgent Care Center, on her own initiative on her day off from work, to receive medical care for her Workplace Injuries/Disabilities.

43.     The alcohol screening that BATESON received was not a proper or bonafide alcohol testing for the purposes outlined in RENOWN's "Post Mishap Testing" policy of RENOWN.HRM.815, §5 and RENOWN's policy RENOWN.HRM.760, including because her alcohol screening occurred on August 24, 2018, which was eleven (11) days after her Workplace Injuries occurred on August 13, 2018, and presence of alcohol in BATESON's bodily system on August 24, 2018, could not possibly indicate whether alcohol was in her system on the date of the Workplace Injuries, eleven (11) days earlier.

44.     The alcohol screening that BATESON received was not a proper or bonafide alcohol testing, for the purposes outlined in RENOWN's other policies concerning Alcohol, including those found elsewhere in RENOWN Policy RENOWN.HRM.815, including because BATESON's alcohol screening occurred on August 24, 2018, which was conducted on BATESON's day off from work, and the screening could not possibly indicate whether BATESON consumed alcohol or was under the influence of alcohol at work or on any workday, and because BATESON had consumed alcohol in her home on August 24, 2018, which was her day off from work, before seeking medical care as described herein, which was her legal right to do.

45.     At all times relevant herein, RENOWN (including through its employees, officers, and agents, including its human resources personnel and management) created, maintained, and/or published to third parties, including prospective employers of BATESON—and/or RENOWN intends

The Geddes Law Firm, P.C.
1575 Delucchi Lane, Suite 206
Reno, NV 89502
Phone 775-853-9455

11

to do the same in the future—false and disparaging information and records of BATESON'S employment, which falsely state or falsely imply that BATESON engaged in employee misconduct, and was terminated for the same, relating to her failed alcohol screening described herein, as if she had consumed or been under the influence of alcohol at work, when, in fact, she had not, but had consumed alcohol (whiskey) on her day off from work, outside the premises of the employer during her nonworking hours, where such use did not adversely affect BATESON's ability to perform her job at RENOWN or the safety of other employees at RENOWN.

46.     At all times relevant herein, RENOWN (including through its employees, officers, and agents, including its human resources personnel and management) continue, or will continue, to create, maintain, and/or publish to third parties, including prospective employers of BATESON, false and disparaging information and records of BATESON'S employment, which falsely state or falsely imply that BATESON engaged in employee misconduct, and was terminated for the same, relating to her failed alcohol screening described herein, as if she had consumed or been under the influence of alcohol at work, when, in fact, she had not, but had consumed alcohol (whiskey) on her day off from work, outside the premises of the employer during her nonworking hours, where such use did not adversely affect BATESON's ability to perform her job at RENOWN or the safety of other employees at RENOWN, and these records and information should rightly be removed from her personnel file and not published to any third party in the future.

47.     Under Federal Rule of Civil Procedure 8, the claims of this pleading are pleaded consistently, inconsistently, and/or alternately, as permitted under the rule, including for claims whose legal elements require "but-for" or "determining-factor" causation.

### V.

### FIRST CLAIM FOR RELIEF

### RA VIOLATIONS:
### UNLAWFUL DISCRIMINATION BASED ON DISABILITIES

**(Section 504 of the RA, 29 U.S.C. § 701 *et seq.* and 29 U.S.C. § 794 *et seq.*
and the Civil Rights Restoration Act of 1987)**

48.     BATESON incorporates by reference all prior allegations of this *Complaint*, as though

12

The Geddes Law Firm, P.C.
1575 Delucchi Lane, Suite 206
Reno, NV 89502
Phone 775-853-9455

fully set forth herein.

49.    At all times relevant here, RENOWN received, and receives federal financial assistance from U.S. Federal departments or agencies, as described herein, such that the RENOWN is a covered employer, within the meaning of the RA.

50.    At all times relevant herein, BATESON's employment at RENOWN exists as part of a program or activity receiving federal financial assistance, within the meaning of § 504 of the RA.

51.    At all times relevant herein, BATESON, having her Disabilities described herein, is a person with handicaps/Disabilities, within the meaning of RA.

52.    At all times relevant herein, BATESON, could perform the essential functions of her job, either with or without a reasonable accommodation from RENOWN.

53.    At all times relevant herein, RENOWN was on notice than an accommodation of BATESON's Disabilities was required, as described herein.

54.    At all times relevant herein, RENOWN engaged in adverse employment actions against BATESON, as described herein, including by suspending and terminating her, which actions impermissibly discriminated against her based on her Disabilities.

55.    At all times relevant herein, RENOWN intentionally discriminated against BATESON when failing to act to accommodate BATESON's Disabilities, and when terminating and firing her, as described herein.

56.    At all times relevant herein, BATESON was dismissed solely because of her Disabilities.

57.    When RENOWN suspended and fired BATESON, BATESON was subjected to intentional discrimination by RENOWN, under any program or activity receiving Federal financial assistance, within the meaning of the RA.

58.    At all times relevant herein, BATESON has been excluded and is continuously being excluded from enjoying the terms, conditions, and benefits of her employment, as she was suspended and terminated from her employment solely by reason of her handicap/Disabilities, as described herein;

59.    At all times relevant herein, BATESON was and is otherwise qualified for employment at RENOWN, within the meaning of RA, and she could, and she can, perform the essential functions of

The Geddes Law Firm, P.C.
1575 Delucchi Lane, Suite 206
Reno, NV 89502
Phone 775-853-9455

13

her job, either with or without a reasonable accommodation.

60.     At all times relevant herein, BATESON suffered intentional discrimination by RENOWN, including when being suspended and terminated from her employment as described herein, by Defendant, because of her handicap/Disabilities, in violation of the RA.

61.     RENOWN's claimed basis for BATESON's termination was a pretext to mask RENOWN's unlawful discrimination under the RA, because of her Disability.

62.     The discrimination by RENOWN (including through its employees, officers, and agents) was intentional and was carried out with deliberate indifference to the federally protected rights of BATESON, including the RA.

63.     At all times relevant herein, RENOWN (including through its employees, officers, and agents) had knowledge that a harm to BATESON's federally protected rights was substantially likely to occur, but they failed to act upon that likelihood.

64.     At all times relevant herein, RENOWN (including through its employees, officers, and agents) had knowledge of BATESON's need for accommodation of her Disabilities, including light/modified work duty, without punitive, adverse, or discriminatory effect against BATESON, including the adverse action of suspending and terminating her employment, as described herein.

65.     At all times relevant herein, the discriminatory intent and deliberate indifference of RENOWN (including through its employees, officers, and agents) is shown by the following acts and omissions of RENOWN:

A.     The timing and temporal proximity of RENOWN's suspension and termination of BATESON occurred a mere two weeks after she suffered the Workplace Injuries, giving rise to her Disabilities, of which RENOWN was aware;

B.     The timing and temporal proximity of RENOWN's suspension and termination of BATESON occurred hours after, and up to three days after, BATESON requested an accommodation of her Disabilities, including through the requests for medical leave from work and her request for modified work duty/light duty restrictions contained in the medical records issued by BATESON's medical provider, of which modified work duty/light duty restrictions and request for accommodation, RENOWN was aware, as both BATESON's medical care provider and employer;

The Geddes Law Firm, P.C.
1575 Delucchi Lane, Suite 206
Reno, NV 89502
Phone 775-853-9455

14

C.    RENOWN was not only the employer of BATESON, but it also operated the Urgent Care Center that provided medical treatment to her, and, at all times relevant herein,

i.    RENOWN was aware that BATESON had Disabilities, within the meaning of the RA;

ii.    RENOWN was aware that BATESON required accommodation of her Disabilities, including in the form of modified work restrictions/light duty;

iii.    RENOWN was aware that BATESON engaged in the lawful use of alcohol (whiskey) in her Nevada residence, on her day off from work, outside the premises of her place of employment during her nonworking hours, and that such use did not adversely affect BATESON's ability to perform her job at Monaco Ridge or the safety of other employees at Monaco Ridge;

iv.    RENOWN understood that BATESON's failing the alcohol test did not actually violate RENOWN's policies, as stated in the "Notice of Corrective Action," dated August 27, 2018, and was immaterial to the performance of her job duties at Monaco Ridge, including because she consumed such alcohol (whiskey) on her day off from work, outside the premises of the employer during her nonworking hours, and that such use did not adversely affect BATESON's ability to perform her job at Monaco Ridge or the safety of other employees at Monaco Ridge;

D.    RENOWN (including through its employees, officers, and agents, including its supervisors and human resource personnel) received special training and education, as well as ongoing and continuous education and training, and also legal advice, on employee rights arising from federal law, state laws and Nevada common law, including employee rights arising under the RA, NRS 613.333, and the common law;

E.    In spite of their knowledge of the law, and their knowledge of the substantial risk of a harm to BATESON's federally protected rights was substantially likely to occur, in suspending her and firing her as described herein, they failed to act upon that likelihood—even after BATESON advised RENOWN, when she was being fired, that her consumption of alcohol (whiskey) in her Nevada residence, on her day off from work, outside the premises of the place of her employment during her nonworking hours, was immaterial to the occurrence of the workplace injury (occurring eleven days prior to being tested) and to her job performance and did not constitute proper

15

1  grounds for terminating her; and

2         F.     At the time of her termination, in response, to BATESON's resistance and

3  criticism of RENOWN's stated reason for terminating her, RENOWN's manager and human resource

4  personnel (including Davis and Preace) failed to suspend the process of BATESON's termination,

5  including to make further inquiry on the matter, but instead continued with the termination process,

6  revealing the wilful and intentional nature of their acts, including when confirming: "sorry, that's the

7  way it is."

8         66.    As a result of such intentional, unlawful, and discriminatory conduct, violative of the

9  RA, committed against BATESON by RENOWN (including through its employees, officers, and

10  agents, including its supervisors and human resource personnel), BATESON has suffered, and

11  continues to suffer, damages, economic losses, including lost wages and benefits, back pay, front pay,

12  retirement contributions, physical and emotional harm, including mental anguish, inconvenience, and

13  the loss of enjoyment of life, for which she is entitled to compensatory and equitable damages against

14  RENOWN, in an amount to be proven at trial.

15         67.    As a result of such intentional, unlawful, and discriminatory conduct, violative of the

16  RA, committed against BATESON by RENOWN (including through its employees, officers, and

17  agents, including its supervisors and human resource personnel), BATESON is entitled to exemplary

18  and punitive damages against RENOWN, which she specifically seeks for this cause of action.

19         68.    As a result of such intentional, unlawful, and discriminatory conduct, violative of the

20  RA, committed against BATESON by RENOWN (including through its employees, officers, and

21  agents, including its supervisors and human resource personnel), BATESON has had to retain the

22  services of attorneys in this matter, and she, therefore, is entitled to and seeks reimbursement from

23  RENOWN, for BATESON's attorneys' fees and costs, her expert-witness fees, and her court costs, in

24  an amount to be proven at trial.

25         69.    As a result of such intentional, unlawful, and discriminatory conduct, violative of the

26  RA, committed against BATESON by RENOWN (including through its employees, officers, and

27  agents, including its supervisors and human resource personnel), BATESON is entitled to, and seeks,

28  declaratory relief, in the form of a declaration by this Court, that RENOWN violated BATESON'S

The Geddes Law Firm, P.C.
1575 Delucchi Lane, Suite 206
Reno, NV 89502
Phone 775-853-9455

rights by engaging in unlawful discrimination, as alleged herein.

70.   As a result of such intentional, unlawful, and discriminatory conduct, violative of the RA, committed against BATESON by RENOWN (including through its employees, officers, and agents, including its supervisors and human resource personnel), BATESON is entitled to, and seeks, injunctive relief, in the form of an injunction issued by this Court, that compels RENOWN to give effect to the rights of BATESON, to reinstate her to her full position, with the full privileges of her employment, as if not terminated, as described herein, and to take other appropriate action, including: the removal of all adverse information from her employee file, relevant to the claims of this case.

### VI.

### SECOND CLAIM FOR RELIEF

### RA VIOLATIONS:
### UNLAWFUL RETALIATION BASED ON DISABILITIES

### (Section 504 of the RA, 29 U.S.C. § 701 *et seq.* and 29 U.S.C. § 794 *et seq.* and the Civil Rights Restoration Act of 1987)

71.   BATESON incorporates by reference all prior allegations of this *Complaint*, as though fully set forth herein.

72.   BATESON engaged in Protected Activity, within the meaning of the anti-retaliation provisions of the RA, as described herein, including when:

A.   In connection with her Disabilities, BATESON requested to take a couple of days off from work for medical reasons because her Disabilities were causing her some immobility and pain, as described herein; and

B.   BATESON requested modified duty at Monaco Ridge, in connection with her medical work restrictions that were ordered by RENOWN PAC Marriot, which request for an accommodation of her Disabilities under the RA was made by BATESON, or on BATESON's behalf by her medical care providers at RENOWN Urgent Care, including by the provision of BATESON's medical records and information to RENOWN, of which information RENOWN was aware before it suspended and/or terminated BATESON, as described herein.  *See e.g. EEOC Enforcement Guidance* No. 915.002,, *§§ 1-3*.

The Geddes Law Firm, P.C.,
1575 Delucchi Lane, Suite 206
Reno, NV 89502
Phone 775-853-9455

17

73.     At all times relevant herein, RENOWN was aware of BATESON's Protected Activity.

74.     BATESON suffered materially adverse actions ("Adverse Actions") by RENOWN, including when:

      A.     It suspended her employment, as described herein;

      B.     It terminated her employment, as described herein; and

      C.     It created, maintained and maintains on file, published and will continue to publish to third parties, including prospective employers, false and disparaging information and records of her employment, falsely stating or falsely implying that she was terminated for misconduct relating to a failed alcohol screening, in connection with her employment, as if she had been under the influence of alcohol at work or consumed alcohol at work, when, in fact, she had not, but had consumed alcohol on her day off from work, outside the premises of the employer during her nonworking hours, where such use did not adversely affect BATESON's ability to perform her job at RENOWN or the safety of other employees at RENOWN.

75.     At all times relevant herein, there existed a causal connection between BATESON's Protected Activity and the Adverse Actions taken against her by RENOWN (including through its employees, officers, and agents), including the causal connection that can be inferred by the temporal proximity of the dates of Protected Activity and Adverse Actions, as described herein.

76.     These causally connected ("Retaliatory") Adverse Actions taken against BATESON by RENOWN (including through its employees, officers, and agents) were intentional and were carried out with deliberate indifference to the federally protected rights of BATESON.

77.     At all times relevant herein, RENOWN (including through its employees, officers, and agents) had knowledge that a harm to BATESON's federally protected rights was substantially likely to occur, but they failed to act upon that likelihood.

78.     At all times relevant herein, RENOWN (including through its employees, officers, and agents) had knowledge of BATESON's right to remain free from the Retaliatory Adverse Actions described herein.

79.     At all times relevant herein, the discriminatory intent and deliberate indifference of RENOWN (including through its employees, officers, and agents) when taking such Retaliatory

The Geddes Law Firm, P.C.
1575 Delucchi Lane, Suite 206
Reno, NV 89502
Phone 775-853-9455

18

Adverse Actions against BATESON is shown by the following acts and omissions of RENOWN:

A.     The timing and temporal proximity of RENOWN's suspension and termination of BATESON occurred a mere two weeks after BATESON's Protected Conduct of Seeking an Accommodation for her Workplace Injuries/Disabilities; and

B.     The timing and temporal proximity of RENOWN's suspension and termination of BATESON occurred on the same day that, and up to three days after, BATESON requested an accommodation of her Disabilities, including through the modified work duty/light duty restrictions issued by BATESON's medical provider, of which accommodations, RENOWN was aware, as both the medical care provider and employer of BATESON;

C.     RENOWN was not only the employer of BATESON, but it also operated the Urgent Care Center that provided medical treatment to her, and, at all times relevant herein,

i.     RENOWN was aware that BATESON had Disabilities, within the meaning of the RA;

ii.     RENOWN was aware that BATESON required accommodation of her Disabilities, including in the form of modified work restrictions/light duty;

iii.     RENOWN was aware that BATESON's medical visit was being seen for a workplace injury eleven (11) days after the Workplace Injury occurred, on her day off from work, and in knowing these things;

iv.     RENOWN was aware that BATESON engaged in the lawful use of alcohol in her Nevada residence, on her day off from work, outside the premises of the employer during her nonworking hours, and that such use did not adversely affect BATESON's ability to perform her job at RENOWN or the safety of other employees at RENOWN;

v.     RENOWN understood that BATESON's failing the alcohol test was immaterial to her performance of her job duties at RENOWN, including because she consumed such alcohol on her day off from work, outside the premises of the employer during her nonworking hours, and that such use did not adversely affect BATESON's ability to perform her job at RENOWN or the safety of other employees at RENOWN;

D.     RENOWN (including through its employees, officers, and agents, including its

The Geddes Law Firm, P.C.
1575 Delucchi Lane, Suite 206
Reno, NV 89502
Phone 775-853-9455

19

supervisors and human resource personnel) received special training and education, as well as ongoing and continuous education and training, and also legal advice, on employee rights arising from federal law, state laws and Nevada common law, including employee rights arising under the RA and NRS 613.333;

E.     In spite of their knowledge of the law, and their knowledge of the substantial risk of a harm to BATESON's federally protected rights was substantially likely to occur, in suspending her and firing her as described herein, they failed to act upon that likelihood—even after she reminded RENOWN, when she was being fired, that her consumption of alcohol in her Nevada residence, on her day off from work, outside the premises of the employer during her nonworking hours, was immaterial to her job performance and did not constitute proper grounds for terminating her; and

F.     At the time of her termination, in response, to BATESON's resistance and criticism of RENOWN's unlawful pretext for terminating her, including BATESON's explanation or implication that she had a legal right to consume alcohol in her Nevada residence, on her day off from work, outside the premises of the employer during her nonworking hours, and such consumption was immaterial to her job performance, RENOWN's human resource personnel deliberately ignored failed to suspend the process of BATESON's termination, including to make further inquiry on the matter, and stating to BATERSON, "sorry, that's the way it is."

80.     As a result of such intentional, unlawful, and discriminatory conduct, violative of the RA, committed against BATESON by RENOWN (including through its employees, officers, and agents, including its supervisors and human resource personnel), BATESON has suffered, and continues to suffer, damages, economic losses, including lost wages and benefits, back pay, front pay, retirement contributions, physical and emotional harm, including mental anguish, inconvenience, and the loss of enjoyment of life, for which she is entitled to compensatory and equitable damages against RENOWN, in an amount to be proven at trial.

81.     As a result of such intentional, unlawful, and discriminatory conduct, violative of the RA, committed against BATESON by RENOWN (including through its employees, officers, and agents, including its supervisors and human resource personnel), BATESON is entitled to exemplary

The Geddes Law Firm, P.C.
1575 Delucchi Lane, Suite 206
Reno, NV 89502
Phone 775-853-9455

and punitive damages against RENOWN, which she specifically seeks for this cause of action.

82.    As a result of such intentional, unlawful, and discriminatory conduct, violative of the RA, committed against BATESON by RENOWN (including through its employees, officers, and agents, including its supervisors and human resource personnel), BATESON has had to retain the services of attorneys in this matter, and she, therefore, is entitled to and seeks reimbursement from RENOWN, for BATESON's attorneys' fees and costs, her expert-witness fees, and her court costs, in an amount to be proven at trial.

83.    As a result of such intentional, unlawful, and discriminatory conduct, violative of the RA, committed against BATESON by RENOWN (including through its employees, officers, and agents, including its supervisors and human resource personnel), BATESON is entitled to, and seeks, declaratory relief, in the form of a declaration by this Court, that RENOWN violated BATESON'S rights by engaging in unlawful discrimination, as alleged herein.

84.    As a result of such intentional, unlawful, and discriminatory conduct, violative of the RA, committed against BATESON by RENOWN (including through its employees, officers, and agents, including its supervisors and human resource personnel), BATESON is entitled to, and seeks, injunctive relief, in the form of an injunction issued by this Court, that compels RENOWN to give effect to the rights of BATESON, to reinstate her to her full position, with the full privileges of her employment, as if not terminated, as described herein, and to take other appropriate action, including: the removal of all adverse information from her employee file, relevant to the claims of this case.

## VII.

## THIRD CLAIM FOR RELIEF

## VIOLATION OF NRS 613.333 – UNLAWFUL EMPLOYMENT PRACTICE

### (Section 504 of the RA and its Amendments Acts and the Civil Rights Restoration Act of 1987)

85.    BATESON incorporates by reference all prior allegations of this *Complaint*, as though fully set forth herein.

86.    The intoxicating liquor of whiskey is a "product" within the meaning of NRS 613.333.

87.    On August 24, 2018, when engaging in the act of consuming whiskey in her home on

The Geddes Law Firm, P.C.
1575 Delucchi Lane, Suite 206
Reno, NV 89502
Phone 775-853-9455

The Geddes Law Firm, P.C.
1575 Delucchi Lane, Suite 206
Reno, NV 89502
Phone 775-853-9455

her day off from work, as described herein, BATESON engaged in the lawful use in Nevada of a product outside the premises of the employer during the employee's nonworking hours, within the meaning of NRS 613.333.

88.     On August 24, 2018, BATESON's use of this product, whiskey, did not adversely affect BATESON's ability to perform her job or the safety of other employees at Monaco Ridge, within the meaning of NRS 613.333, including because she did not work that day (as she was not scheduled to work that day), nor did she visit the premises of her employment at Monaco Ridge that day, either.

89.     On August 24, 2018, RENOWN suspended BATESON's employment because she consumed whiskey on August 24, 2018, as described herein.

90.     On August 27, 2018, RENOWN terminated BATESON's employment because she consumed whiskey on August 24, 2018, as described herein.

91.     When suspending and terminating BATESON, because she consumed whiskey on August 24, 2018, RENOWN violated NRS 613.333, which prohibits the discharge of, or other discriminatory action taken against, employees for their lawful use in Nevada of any product outside the premises of the employer during the employee's nonworking hours, if that use does not adversely affect the employee's ability to perform his or her job or the safety of other employees.

92.     As a result of such intentional, unlawful, and discriminatory conduct, violative of the NRS 613.333, committed against BATESON by RENOWN (including through its employees, officers, and agents, including its supervisors and human resource personnel), BATESON has suffered, and continues to suffer lost wages and benefits, for which she is entitled to statutory damages for any wages and benefits lost as a result of the violation, as allowed by NRS 613.333(2)(a), against RENOWN, in an amount to be proven at trial.

93.     As a result of such intentional, unlawful, and discriminatory conduct, violative of the NRS 613.333, committed against BATESON by RENOWN (including through its employees, officers, and agents, including its supervisors and human resource personnel), BATESON is entitled to statutory damages equal to the amount of lost wages and benefits, as allowed by NRS 613.333(2)(d), which amount is in addition her other losses stated herein.

94.     As a result of such intentional, unlawful, and discriminatory conduct, violative of NRS

613.333, committed against BATESON by RENOWN (including through its employees, officers, and agents, including its supervisors and human resource personnel), BATESON is entitled to, and seeks, injunctive relief, in the form of an order of reinstatement without loss of position, seniority or benefits, as allowed by NRS 613.333(2)(b), and for other, related injunctive relief, including: the removal of all adverse information from her employee file and a neutral job reference to prospective employees, relevant to the claims of this case.

95.     As a result of such intentional, unlawful, and discriminatory conduct, violative of NRS 613.333, committed against BATESON by RENOWN (including through its employees, officers, and agents, including its supervisors and human resource personnel), BATESON has had to retain the services of attorneys in this matter, and she, therefore, is entitled to and seeks reimbursement from RENOWN, for BATESON's attorneys' fees and costs, her expert-witness fees, and her court costs, in an amount to be proven at trial, as allowed by NRS 613.333(3).

## VIII.

## FOURTH CLAIM FOR RELIEF

### Tortious Discharge in Violation of Public Policy | Retaliation for Filing Worker's Compensation Claim

96.     BATESON incorporates by reference all prior allegations of this *Complaint*, as though fully set forth herein.

97.     In Nevada, retaliatory discharge by an employer, in response to an employee seeking worker's compensation benefits, is actionable in tort, as violative of public policy.

98.     At all relevant times hereto, BATESON pursued worker's compensation benefits for her work-related injuries, prior to her termination, including when:

A.     Filing a worker's compensation claim on August 14, 2018, as described herein; and

B.     Obtaining medical care for her Workplace Injuries at the Urgent Care Center on August 24, 2018, as described herein

99.     On August 27, 2018, RENOWN retaliated against BATESON for her seeking worker's compensation benefits by terminating her employment, including as evidenced by the temporal

The Geddes Law Firm, P.C.
1575 Delucchi Lane, Suite 206
Reno, NV 89502
Phone 775-853-9455

proximity between the dates of BATESON pursuing worker's compensation benefits and the date of her termination, which temporal proximity was a period of 3 days from her obtaining medical care at the Urgent Care Center and 10 days from she filed her "C-4" claim, which temporal proximity was very close.

100.   Accordingly, Defendant RENOWN tortiously discharged BATESON, in violation of public policy causing injury, harm, and damages to BATESON, and Defendant is liable for such tortious discharge.

101.   As a direct and proximate result of the intentional, malicious, willful, deliberately indifferent, oppressive, reckless, careless, and/or negligent conduct of Defendant RENOWN, including through its employees and agents, as described herein, BATESON incurred, and will continue to incur in the future, damages, in an amount to be proven at trial.

102.   As a direct and proximate result of the intentional, malicious, willful, deliberately indifferent, oppressive, reckless, and/or careless conduct of Defendant RENOWN, as described herein, BATESON sustained harm and injury including, economic losses, physical injury, mental injury, mental anguish, humiliation, embarrassment, emotional distress, inconvenience, pain, suffering, and damages, entitling BATESON to compensatory damages, as allowed by law, according to proof at trial.

103.   As a further direct and proximate result of the intentional, malicious, willful, deliberately indifferent, oppressive, reckless, careless, and/or negligent conduct of Defendant RENOWN, as described herein, BATESON has had to retain the services of attorneys in this matter, and she, therefore, seeks and is entitled to reimbursement for attorney's fees and costs.

## IX.

## PRAYER FOR RELIEF

WHEREFORE, BATESON prays for judgment against Defendant RENOWN, as follows:

1.   For equitable relief, including back pay and front pay;

2.   For general, compensatory damages on all claims, in an amount to be proven at trial;

3.   For special, compensatory damages on all claims, in an amount to be proven at trial;

4.   For past and future compensatory damages, including incidental and consequential losses, incurred by reason of Defendant's acts, omissions, carelessness, negligence,

The Geddes Law Firm, P.C.
1575 Delucchi Lane, Suite 206
Reno, NV 89502
Phone 775-853-9455

24

deliberate indifference, and other culpable conduct described herein, in an amount to be proven at trial;

5.   For exemplary and punitive damages, as allowed by law;

6.   For lost wages, lost benefits, an order of reinstatement, damages, and fees and costs on the Third Claim for Relief for Violation of NRS 613.333, as allowed under NRS 613.333(2)(a)-(d) and (3);

7.   For costs of the suit incurred herein;

8.   For attorneys' fees, costs, and prejudgment interest, as allowed by law;

9.   For experts' fees, costs as allowed by law, in an amount in an amount to be determined at trial;

10.   For Declaratory relief, equitably determined by the Court at trial. Pursuant to 28 U.S.C. § 2201, Federal Rule of Civil Procedure 57, 42 U.S.C. §§ 2000e-5, NRS 30.070, NRS 30.100, NRS 613.333, and the Court's inherent equitable powers, BATESON seeks, and is entitled to have, declaratory relief awarded in her favor, to declare her rights and obligations of Defendant RENOWN, which matters are now in controversy or dispute, where such declaratory relief is necessary and proper to the termination of the disputes raised herein, including as specifically prayed for below, including declaratory relief whereby the Court issues a declaration that Defendant RENOWN unlawfully discriminated and retaliated against BATESON, in violation of the RA, and otherwise violated BATESON'S rights under federal law and state law, as alleged herein, and regarding the rights and obligations of the parties, relating to BATESON'S employment and re-employment;

11.   Based on the foregoing, BATESON has suffered an irreparable injury, and the remedies available at law, such as monetary damages, are inadequate to compensate for that injury.  This inadequacy is, in part, based on the fact that RENOWN is currently publishing false and defamatory information to third parties, including prospective employers of BATESON, concerning BATESON's employment tenure with RENOWN, as described herein, which is wrongfully interfering with BATESON's ability to obtain

The Geddes Law Firm, P.C.
1575 Delucchi Lane, Suite 206
Reno, NV 89502
Phone 775-853-9455

25

employment and otherwise is defaming her.  As such BATESON is entitled to injunctive relief, including an injunction compelling Defendants:

(a)     To remove false, adverse information contained in her personnel files relating to the claims of this case;

(b)     To provide only a "neutral" job reference concerning BATESON's tenure at RENOWN, to all inquiring prospective employers; and

(c)     To reinstate BATESON's employment at RENOWN, if feasible and appropriate, with full pay and benefits, as if never terminated.

Considering the balance of hardships between Plaintiff and Defendants, a remedy in equity is warranted, and the public interest would not be disserved by issuance of such injunctive relief. BATESON herein seeks Injunctive relief, equitably determined by the Court at trial;

12.     For such other relief as the Court may deem just and proper; and

13.     Pursuant to the *Federal Rules of Civil Procedure*, Rule 38, Plaintiff demands a trial by jury on all issues triable by right of a jury.

Dated this 18<u>TH</u> day of May 2020.          THE GEDDES LAW FIRM, P.C

WILLIAM J. GEDDES, ESQ.
Nevada Bar Number 6984
The Geddes Law Firm, P.C.
1575 Delucchi Lane, Suite 206
Reno, Nevada 89502
(775) 853-9455
*Attorneys for Plaintiff Donna Bateson*

The Geddes Law Firm, P.C.
1575 Delucchi Lane, Suite 206
Reno, NV 89502
Phone 775-853-9455